UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>-vs-<br>LUIS ORTIZ,<br>　　　　　Defendant. | REPORT AND RECOMMENDATION<br>20-CR-6096-EAW-MJP-3 |

**APPEARANCES**

For the United States: 　　　　　Everardo A. Rodriguez, Esq.
　　　　　　　　　　　　　　　　Assistant Unites States Attorney
　　　　　　　　　　　　　　　　United States Attorney's Office
　　　　　　　　　　　　　　　　100 State Street, Suite 500
　　　　　　　　　　　　　　　　Rochester, New York 14614

For the Defendant: 　　　　　　Matthew R. Lembke
　　　　　　　　　　　　　　　　Cerulli, Massare & Lembke
　　　　　　　　　　　　　　　　45 Exchange Boulevard
　　　　　　　　　　　　　　　　Suite 925
　　　　　　　　　　　　　　　　Rochester, NY 14614

## INTRODUCTION

**Pedersen, M.J.** In a superseding indictment filed on October 22, 2020, the Grand Jury charged defendant Luis Ortiz ("Defendant") with narcotics conspiracy in violation of Title 21, United States Code, §§ 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C), all in violation of Title 21, United States Code § 846 (Count 1). (Indictment, ECF No. 64.) On July 9, 2020, the Honorable Elizabeth A. Wolford, U.S. District Judge referred the case to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) & (B). (ECF No. 37.)

On March 30, 2021, Defendant filed his omnibus motion. (Affirmation of Matthew R. Lembke, ECF No. 102-1.) The government filed a Memorandum in

Opposition to Pre-Trial Motions of Luis Ortiz on April 13, 2021. (Gov't Resp., ECF No. 104.)

On April 19, 2021, the undersigned heard oral argument on the omnibus motion. (ECF No. 111.) On that same date, Defendant filed an affidavit, sworn to on April 18, 2021, in support of his motion to suppress regarding evidence obtained from the search of his residence, establishing Defendant's standing to make this motion. (ECF No. 107.) The undersigned issued a decision on Defendant's omnibus motion, reserving a decision with respect to Defendant's application to suppress tangible evidence. (Order, ECF No. 110.)

After hearing oral argument and reviewing all motion papers, the undersigned recommends that Defendant's motion for suppression of tangible evidence be denied.

## STANDARD OF LAW

The relevant portion of 28 U.S.C. § 636(b)(1)(A) and (B) provides that the undersigned may "conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion . . . to suppress evidence in a criminal case."

## DISCUSSION

*Findings of Fact Regarding Defendant's Motion to Suppress Tangible Evidence*

The undersigned issued a search warrant for 100 Borinquen Plaza, Apartment 506, Rochester, New York, based upon a finding of probable cause as detailed in the Affidavit of Sabatino Smith, Special Agent with the Drug Enforcement Administration, sworn to on June 16, 2020. (Smith Aff. at 142, ECF No. 1.)

Defendant contends that all items seized pursuant to the search of 100 Borinquen Plaza, Apartment 506 must be suppressed, including between three to four grams of heroin, cell phones, a digital scale, and documents addressed to Defendant at 100 Borinquen Plaza, on the ground that the information upon which the search warrant was issued was stale. Defendant argues that for this reason the warrant lacked the requisite probable cause. (Lembke Aff. at 3.)

Here, Agent Smith's 141-page, 284-paragraph affidavit details the extensive investigation by the Drug Enforcement Agency, Rochester Police Department, New York State Police, and agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives into the narcotics trafficking activities of nine individuals beginning in 2018, and involving the distribution of large quantities of controlled substances in Rochester, New York. The affidavit sets forth detailed information regarding the operation of the narcotics activities and how this information was obtained, including but not limited to confidential informants, controlled purchases, wiretaps, physical surveillance, cellular GPS data, and GPS monitoring of vehicles.

From October 2019 to May 2020, investigators conducted wiretaps authorized by orders obtained from United States District Court Judge Wolford. Agent Smith's affidavit contains many conversations between the charged individuals in this case and with other individuals, which, based upon Agent Smith's training and experience, involved discussions about narcotics trafficking. The affidavit contains information that these activities were ongoing and long-term, and alleges specific conduct beginning in 2018 and continuing through the date of application. The affidavit also

contains corroborating information from other participating investigators and other witnesses. *See United States v. Tussa*, 816 F.2d 58, 63 (2d Cir. 1987) (A probable cause finding may be based wholly on hearsay, and affidavits in support of a warrant application may contain not only the author's observations, but also collective knowledge gleaned from multiple officers.)

Agent Smith's affidavit includes allegations related to six instances involving Defendant, on the following dates: November 29, 2019, December 16, 2019, January 26, 2020, February 4, 2020, March 13, 2020 and May 4, 2020[1]. (Smith Aff. at 70, 78, 84, 87, & 90.) Smith contended that Defendant processed and/or packaged and/or stored drugs for co-defendant Angel Ortiz at Defendant's residence. (*Id.* at 71, 75–76, 80, 81, 86, 89, 92–93.) Smith further asserted that agents involved in this narcotics conspiracy observed Angel Ortiz visiting 100 Borinquen Plaza, Apartment 506 on several occasions, which coincided with Angel Ortiz's communications with a customer seeking drugs. (*Id.* at 73, 74, 77, 78–79, 81, 82, 84–85, 87–90, 92–93.) Further, Agent Smith indicated that "based on [his] training, experience, and participation in this and other drug trafficking and money laundering investigations

---

[1] Defendant asserts that allegations of activity that occurred on May 5, 2020, as contained in paragraphs 165–68 of Agent Smith's affidavit "do not have anything to do with Luis Ortiz or 100 Borinquen Plaza #506." (Lembke Aff. at 3–4.) First, the allegations contained in paragraphs 165–68 of Agent Smith's affidavit involve activities occurring on May 4, 2020, not May 5, 2020. (Smith Aff. at 96–98.) Further, paragraphs 165–68 specifically discuss a call and texts between Defendant and Angel Ortiz on that date, which Smith opined, based upon his training and experience, meant that Angel Ortiz was traveling to Defendant's residence to obtain a quantity of narcotics. (*Id.* at 97.) Further, Smith indicated that cellular location data determined that Angel Ortiz was in the vicinity of 100 Borinquen Plaza at the time he texted Defendant "I'm outside." (*Id.* at 98.)

and based upon [his] discussions with other experienced DEA Agents, and Federal, State, and Local drug investigators" he knew that, for example, drug traffickers

> frequently maintain, at their residence, place of business or inside their vehicles quantities of narcotics to maintain their ongoing drug distribution business . . . [as well as keeping] at their residence, place of business or inside their vehicles, paraphernalia for the packaging, diluting, cutting, weighing, processing and distributing of controlled substances, including scales, plastic bags, cutting agents and utensils.

(*Id.* at 115.)

### *Legal Conclusions Regarding Defendant's Motion to Suppress Tangible Evidence*

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "To establish probable cause to search a residence, two factual showings are necessary—first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at the residence." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983). Here, the dispute centers on whether the information upon which the undersigned found probable cause to issue the warrant for the search of 100 Borinquen Plaza, Apartment 506 was stale.

"[P]robable cause to search a place exists if the issuing judge finds a 'fair probability that contraband or evidence of a crime will be found in a particular place' and a federal court must apply a 'totality-of-the-circumstances analysis' in pursuing this inquiry." *United States v. Ponce*, 947 F.2d 646, 650 (2d Cir. 1991), *cert. denied*, 503 U.S. 943 (1992) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). When reviewing the validity of a search warrant:

5

> the duty of [the] court . . . is simply to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed. A search warrant issued by a neutral and detached magistrate is entitled to substantial deference, and doubts should be resolved in favor of upholding the warrant.

*United States v. Rosa*, 11 F.3d 315, 326 (2d Cir. 1993), *cert. denied*, 511 U.S. 1042 (1994) (internal quotations and citations omitted); *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007) ("[A] reviewing court must accord considerable deference to the probable cause determination of the issuing magistrate. . . ."). "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit [applying for a warrant] should not take the form of *de novo* review." *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (quoting *Gates*, 462 U.S. at 236) (alteration in original). "[R]esolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)); *see United States v. Clark*, 638 F.3d 89, 93 (2d Cir. 2011) ("Such deference derives not only from the law's recognition that probable cause is 'a fluid concept' that can vary with the facts of each case, but also from its 'strong preference' for searches conducted pursuant to a warrant, and its related concern that '[a] grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." (alteration in original) (citations omitted)).

The "[t]wo critical factors in determining whether facts supporting a search warrant are stale are the age of those facts and the nature of the conduct alleged to have violated the law." *United States v. Ortiz*, 143 F.3d 728, 732 (2d Cir. 1998), *cert. denied*, 525 U.S. 910 (1998) (internal quotations and citations omitted).

6

When the supporting facts "present a picture of continuing conduct or an ongoing activity, ... the passage of time between the last described act and the presentation of the application becomes less significant." *United States v. Martino,* 664 F.2d 860, 867 (2d Cir. 1990), *cert. denied sub nom*, *Miller v. United States*, 458 U.S. 1110 (1982). Thus, the Second Circuit has held that in investigations of ongoing narcotics operations, "intervals of weeks or months between the last described act and the application for a warrant did not necessarily make the information stale." *Rivera v. United States,* 928 F.2d 592, 602 (2d Cir. 1991). The Second Circuit has further held that "narcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness." *United States v. Rowell*, 903 F.2d 899, 903 (2d Cir. 1990) (quotation marks and citation omitted); *see, e.g.*, *Rowell*, 903 F.2d at 903 ("Given the continuous nature of narcotics conspiracies and [defendant's] statements to the Florida undercover officer about his on-going marijuana distribution operation, the approximately 18-month delay between procuring the informant's statements and seeking the wiretap warrant did not render the information stale."); *United States v. Singh*, 390 F.3d 168, 182–83 (2d Cir. 2004) (information provided in support of a search warrant that was over a year and a half old was not considered stale where the individuals painted a picture of continuing criminal conduct and illicit activity and there was no indication that it was likely to cease in the future.)

The factual findings detailed above provided the undersigned with a substantial basis to determine there was probable cause to believe that crimes had

occurred and that evidence of those crimes would be found at 100 Borinquen Plaza, Apartment 506.

Further, Agent Smith's affidavit provides detailed information regarding ongoing criminal conduct and illegal activity. The allegations describe narcotics trafficking activities, and maintenance of various premises to carry on those illegal activities, over several years. Agent Smith's affidavit alleges that Defendant participated in these activities as recently as May 4, 2020—just six weeks and a day earlier than the issuance of the warrant to search 100 Borinquen Plaza, Apartment 506 on June 16, 2020. This information must also be considered in light of the nature of the crimes charged and the totality of the information contained in the affidavit. Based upon the forgoing reasons, the undersigned recommends that the district court reject Defendant's argument that the information contained in the affidavit was stale, and that the undersigned had a substantial basis for finding that probable cause existed to search 100 Borinquen Plaza, Apartment 506.

***Findings of Fact Regarding the Application of the Good Faith Exception to the Warrant.***

As explained below, the Court further recommends to the district court that even if the warrant application was insufficient to establish probable cause, the good faith exception applies to salvage the search.

Defendant asserts that the good faith exception does not apply here because "[t]he allegations in [Agent Smith's] affidavit are stale on their face and the officers who were involved in the investigation and the preparation of the warrant application were aware of this." (Lembke Aff. at 5.) In response, the government contends that

"Defendant has not shown and cannot show that the searching officers did not rely in good faith on the search warrant." (Gov't Resp. at 8.) The government further asserts that any deterrence that may result should the evidence be suppressed is outweighed by "the heavy cost of excluding otherwise admissible and probative evidence seized in Apartment 506." (*Id.* at 9.)

### *Legal Conclusions Regarding the Application of the Good Faith Exception to the Warrant.*

Even if the warrant lacked probable cause and Defendant's Fourth Amendment rights were violated when 100 Borinquen Plaza, Apartment 506 was searched, the exclusionary rule does not automatically operate to suppress the seized evidence. "Indeed, exclusion has always been our last resort, not our first impulse." *Herring v. United States*, 555 U.S. 135, 140 (2009) (internal quotations and citation omitted). The exclusion of evidence obtained in violation of the Fourth Amendment is a "prudential" remedy, crafted by the Supreme Court to "compel respect for the constitutional guaranty." *Davis v. United States,* 564 U.S. 229, 236 (2011) (internal quotations omitted). Neither a "personal constitutional right" nor a means to "redress the injury" of an unconstitutional search, the exclusionary rule is designed to deter future Fourth Amendment violations. *Id.* 236–237 (internal quotations and citations omitted). Because the remedy exacts a heavy toll on the justice system, however, the exclusionary rule does not apply whenever suppressing evidence "might provide marginal deterrence." *Herring,* 555 U.S. at 141 (internal quotations omitted). The rule's corrective value justifies its cost "when the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights." *United States v.*

9

*Stokes,* 733 F.3d 438, 443 (2d Cir. 2013) (internal quotations and citation omitted). "But when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence . . . exclusion cannot pay its way." *Davis,* 564 U.S. at 238 (internal quotations and citations omitted).

In light of these principles, courts have recognized that evidence obtained by officers "in objectively reasonable reliance" on a warrant subsequently invalidated by a reviewing court is not generally subject to exclusion. *United States v. Falso,* 544 F.3d 110, 125 (2d Cir. 2008), *cert. denied*, 558 U.S. 933 (2009) (citing *United States v. Leon*, 468 U.S. 897, 922 (1989)). When an officer genuinely believes that he has obtained a valid warrant from a magistrate and executes that warrant in good faith, there is no conscious violation of the Fourth Amendment, "and thus nothing to deter." *Leon,* 468 U.S. at 920–21. However, the good faith exception cannot shield even an officer who relies on a duly issued warrant in at least four circumstances: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *Clark,* 638 F.3d at 100 (internal quotations and citations omitted). The Supreme Court clarified that these limitations apply not merely in cases of deliberate police misconduct, but also in situations where an officer is "reckless" or "grossly negligent" in seeking or executing a warrant. *Herring,* 555 U.S. at 144; *see also Davis,* 564 U.S. at 238.

10

"The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance on an invalidated warrant." *Clark*, 638 F.3d at 100 (internal quotations and citations omitted). Moreover, as counseled by the Second Circuit, in assessing whether the government has met its burden, a court must consider that "in *Leon*, the Supreme Court strongly signaled that most searches conducted pursuant to a warrant would likely fall within [the good faith exception's] protection." *Id.*

Here, Defendant appears to be asserting that the fourth *Leon* exception applies—that the warrant was so deficient on its face that reliance upon it was unreasonable. (Lembke Aff. at 5.) To fall under this exclusion, "a warrant may be so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923. More particularly, "a warrant is facially defective when it omits or misstates information specifically required to be contained therein, *i.e.,* 'the place to be searched, and the persons or things to be seized.'" *Clark*, 638 F.3d at 102 (citing U.S. Const. amend. IV); s*ee* Fed. R. Crim. P. 41(e) (a warrant only needs to "identify the person or property to be searched, identify any person or property to be seized, [ ] designate the magistrate judge to whom it must be returned," and command the government to execute the warrant within a specified date and time.).

Defendant has not described how the warrant was deficient other than stating that "[t]he allegations in the affidavit are stale on their face and the officers who were involved in the investigation and the preparation of the warrant application were

11

aware of this" (Lembke Aff. at 5.) Defendant does not, for example, assert that the warrant failed to particularize the place to be searched or the things to be seized. Indeed, a review of the warrant demonstrates that it specifically listed the place to be searched—i.e., 100 Borinquen Plaza, Apt. 506, Rochester, New York—and attached a picture of the location, together with a more detailed description of the apartment's location. Further, the search warrant attached a "Schedule of Items to Be Seized," with subsections "a" through "i" detailing what could be seized. The search warrant also included an addendum for the search of computers, describing the protocols to be utilized for the search of any computers seized. The search warrant provides that the search must be conducted "on or before June 30, 2020," and that this must occur "in the daytime 6:00 a.m. to 10:00 p.m." Finally, the warrant states that the executing officer or an officer present during the execution of the search warrant must prepare an inventory and promptly return the warrant and inventory to the undersigned.

Additionally, in determining whether a warrant is facially deficient, a court must consider whether a warrant was so deficient that the *executing officers* cannot reasonably believe it is valid. Defendant, however, does not address whether the officers executing the warrant could have found it valid but instead argues that the officers involved in the investigation and preparation of the warrant purportedly knew that the information was stale. In addition, Defendant has also failed to offer any evidence to suggest that the searching officers did not rely on the warrant in good faith.

12

Included in the section of defense counsel's affirmation arguing that the good faith exception does not apply, defense counsel asserts that the way in which the allegations related to Defendant were presented in Agent Smith's affidavit made it appear that Defendant or his residence were involved in narcotics trafficking closer in time to the when the warrant was issued than they actually were.[2] More specifically, defense counsel contends that Agent Smith's "allegations of the events alleged to have occurred in April and May of 2020, [ ] clearly do not relate to probable cause to search 100 Borinquen Terrace [*sic*]." (*Id.*)

However, as addressed in footnote 1, above, Agent Smith's affidavit included events in May 2020 under the section of his affidavit labeled "Angel Ortiz and Luis Ortiz" that do involve Defendant and his residence. (Smith Aff. at 70). Indeed, a review of paragraphs 165 through 168 of Agent Smith's affidavit reveals the transcript of a call between Angel Ortiz and Defendant on May 4, 2020, during which Angel Ortiz told Defendant that he was coming to 100 Borinquen Plaza. (*Id.* at 97.) Once he arrived at that location, Angel Ortiz texted "I'm outside." Based on his training and experience, Agent Smith opined that this interaction meant that Angel Ortiz was going to 100 Borinquen Plaza to obtain a quantity of narcotics from Defendant. (*Id.* at 97.) Cellular location data reviewed by a member of the investigative team further corroborates that Angel Ortiz did, in fact, visit that

---

[2] It is not clear to this Court how this assertion supports Defendant's argument that the warrant was facially invalid, but, nevertheless, the Court will address it.

location when he texted that he was "outside," as it shows he was in the vicinity of 100 Borinquen Plaza when he sent the text. (*Id.* at 98.)

In sum, even if the warrant lacked probable cause, the undersigned recommends to the district court that the good faith exception applies to salvage the search and Defendant's arguments otherwise are not persuasive and should be rejected.

## CONCLUSION

Based on the foregoing, the undersigned recommends that the district court deny Defendant's motion to suppress tangible evidence (ECF No. 102).

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g.*, *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

DATED:   May 6, 2021
         Rochester, New York

_____
MARK W. PEDERSEN
United States Magistrate Judge